**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Morgan Pankratz,** | **Case No. 1:24-cv-2035** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Day & Ross USA, Inc., et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendants Day & Ross USA, Inc. ("Day & Ross"), Devante Jonqui ("Jonqui"), and A&S Services Group, LLC's ("A&S") (collectively "Defendants") Motion for Summary Judgment (the "Motion").  (Doc. No. 21.)  Plaintiff Morgan Pankratz ("Plaintiff"), individually and as the executrix of the estate of decedent Patricia Pankratz ("P.P."), filed a Brief in Opposition to the Motion (the "Opposition"), and Defendants filed their Reply in Support of the Motion (the "Reply") (Doc. Nos. 24, 26.)  For the following reasons, the Motion is granted.

I.      **Background**

This case involves a fatal car accident that occurred on August 29, 2024, on a stretch of Interstate-90 ("I-90") in Euclid, Ohio.  At the time, Jonqui was working as a commercial truck driver for A&S.[1]  (Doc. No. 24 at PageID# 131, n. 1); (Doc. No. 24-8 at PageID# 293).  The weather was clear and sunny as Jonqui drove a 2024 Mack Anthem Truck pulling a trailer (the "Truck") west

---

[1] A&S is a fully owned subsidiary of Day & Ross.  (Doc. No. 16 at ¶ 4.)

towards Cleveland.  (Doc. No. 21-1 at PageID# 103); (Doc. No. 24-3 at PageID#s 192-93, 206.)[2]  It is undisputed that prior to the accident Jonqui passed several signs on the road that read: "SHOULDER – AUTHORIZED BUSES ONLY."  (*Id.* at PageID# 220); (Jonqui Depo. (Doc. No. 24-1) at Tr. 122.)

At approximately 1:00 p.m., Jonqui received a message from his supervisor, Julie Wilcox, asking him to certify his driving logs from the past few days.[3]  (Doc. No. 24-4 at PageID# 229); (Jonqui Depo. (Doc. No. 24-1) at Tr 110.)  Hoping to respond to these messages, at around 1:49/1:50 p.m., Jonqui stopped on the shoulder of I-90 in Euclid, Ohio, near Mile 183 marker.  (*Id.*); (Jonqui Depo. (Doc. No. 21-2) at Tr. 29); (Doc. No. 21-1 at PageID# 103); (Doc. No. 24-3 at PageID# 192.) The parties dispute whether upon stopping, Jonqui activated his hazard lights.  *Compare* (*Id.* at PageID# 228); *with* (Jonqui Depo. (Doc. No. 21-2) at Tr. 128.)  Jonqui stopped completely off the roadway as pictured below:

---

[2] In the Declaration of Eric Brown and his Reconstruction Report attached thereto, Brown, an accredited crash reconstructionist, notes that while it was sunny at that time, the sun would not have been in the parties' direct line of sight.  (Doc. No. 24-3 at PageID# 193.)

[3] Throughout the Opposition, Plaintiff argues that Jonqui was texting prior to the accident, and if he had not been, he may have found a safer place to stop.  (Doc. No. 24 at PageID# 133.)  Whether Jonqui was texting and driving some forty minutes before the accident bears no relevance on this Court's assessment on whether proximate cause exists.



**Photograph of the Truck Taken by Police Officers After the Collision**

(Doc. No. 24-3 at PageID# 198.)  *See also* (Doc. No. 21 (citing (Doc. No. 21-3) at PageID# 119) (Plaintiff admitting that "the tractor-trailer appears to have been parked outside of the roadway at the time of the incident"); (Doc. No. 24-4 at PageID# 235) (image of the Truck stopped on the shoulder taken by Jonqui and sent to Wilcox after the accident).  The speed limit on that particular stretch of I-90 was sixty (60) miles per hour, and at the time of the stop, the traffic was light.[4]  (Doc. No. 24-3 at PageID# 195); (Doc. No. 21-1 at PageID# 105.)

After Jonqui came to a complete stop,[5] Charles Pankratz ("C.P.") was driving a 2005 Jeep Grand Cherokee ("the Jeep") on the same stretch of I-90, accompanied by his wife, P.P., in the

---

[4] Defendants conventionally filed footage from the truck's front-facing camera in support of the Motion.  *See* (Doc. No. 22.)  However, the manual filing was encrypted, and Defendants failed to provide this Court with a password that would permit it to access the filing.  Nevertheless, the Reconstruction Report filed by Plaintiff includes a dozen frames of this footage, *see* (Doc. No. 24-3 at PageID#s 211-22), and more importantly as this Court later discusses, there are no issues of material fact that would preclude it from finding that proximate cause does not exist.

As to the traffic conditions that day, Defendants allege, and Plaintiff does not appear to dispute, that the traffic was light at the time of the accident.  The frames excerpted from the dash camera footage and included as support for the Opposition, support this finding.  (Doc. No. 24-3 at PageID# 45.)  The images show that while there were other cars in traveling on I-90 at the time of the crash, the motorway was not heavily trafficked.  (*Id.*)

[5] The parties dispute whether the collision occurred twenty (20) or six (6) seconds after Jonqui came to a complete stop. *Compare* (Doc. No. 24-3 at PageID# 222) *with* (Jonqui Depo. (Doc. No. 21-2) at Tr. 113.)

passenger seat, when he swerved out of the lane onto the shoulder, rear-ending the Truck. (Doc. No. 24 at PageID# 135); (Doc.No. 21 at PageID# 92.) There were no signs that C.P. attempted to brake before hitting the Truck. (Doc. No. 21-1 at PageID# 104); (Doc. No. 24-5 at PageID# 248.)

Plaintiff maintains that C.P. suffered from a sudden medical emergency, which prompted him to swerve. (Doc. No. 24 at PageID# 136.) Dr. Kousik Krishnan, a board-certified cardiologist, testifying on behalf of Plaintiff, asserts that C.P. suffered from "a nonlethal arrhythmia." (Doc. No. 24 at PageID# 135) (citing (Doc. No. 24-5 at PageID# 248.)) "That arrythmia likely led to a syncopal episode that impaired his ability to control his vehicle or avoid his collision with the truck." (*Id*.) Dr. Krishnan also testified that "syncopal episodes caused by non-lethal arrythmias are typically very brief, lasting only a few seconds." (*Id*.) Defendants do not appear to dispute that C.P. suffered from a sudden medical emergency but do no remark on its nature.

Pictured below is a photograph of the Jeep taking by the police officers that arrived at the scene:



**Photograph of the Jeep Taken by Police Officers After the Collision**

(Doc. No. 24-3 at PageID# 198.)  Sadly, P.P. and C.P. did not survive the crash.  (Doc. No. 24-3 at PageID# 185); (Doc. No. 21-1 at PageID# 104).  Plaintiff now brings this action on behalf of her mother, P.P.

## II.     Procedural History

On October 20, 2024, Plaintiff filed a Complaint against Day & Ross and Jonqui in the Cuyahoga County Court of Common Pleas, asserting claims for (1) negligence against Jonqui; (2) vicarious liability against Day & Ross; and (3) negligent hiring, training, and supervision against Day & Ross.  (Doc. No. 1-1.)  On November 21, 2024, Day & Ross removed the case to this Court on the basis of diversity jurisdiction.  (Doc. No. 1.)  On June 16, 2025, Plaintiff filed the First Amended Complaint and added A&S as a defendant to the action.  (Doc. No. 13.)  Therein, Plaintiff asserts the following causes of action: (1) negligence against Jonqui ("First Cause of Action"); (2) vicarious liability against Day & Ross and A&S ("Second Cause of Action"); and (3) negligent hiring, training, and supervision against Day & Ross and A&S ('Third Cause of Action").  (*Id*.)[6] Defendants filed their Answer to the First Amended Complaint on June 30, 2025.  (Doc. No. 16.)

On October 16, 2025, Defendants filed the Motion.  (Doc. No. 21.)  Plaintiff filed the Opposition on November 17, 2025, to which Defendants replied on December 1, 2025.  (Doc. Nos. 24, 26.)  Accordingly, the Motion is ripe for review.

## III.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[6] In the Motion, Defendants contend that Plaintiff fails to identify whether her claims are for negligence or wrongful death but because "one of the theories for wrongful death is negligence, the issues are addressed collectively below." (Doc. No. 21 at PageID# 92, n.1) (citing R.C. 2125.01.)  Plaintiff does not address this contention in the Opposition. Regardless, to prevail on a wrongful death action under a negligence theory, a plaintiff must establish the same three elements as an ordinary negligence claim. *See Littleton v. Good Samaritan Hosp. & Health Ctr*., 529 N.E.2d 449 (1988).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a

6

jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp.3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## IV.    Analysis

For the sake of argument, this Court will assume that Jonqui owed his fellow motorists a duty to refrain from stopping the Truck on the shoulder of I-90 and breached it.[7]  But even assuming this, Plaintiff must still allege that Jonqui's actions were the cause, both proximate and actual, of P.P.'s injuries.  Thus, turning to the issue of proximate cause, this Court must determine whether C.P.'s[8] act of swerving off the road and colliding with the Truck, even if that behavior was prompted by a sudden medical emergency, constitutes a new and independent cause of P.P.'s injuries that would absolve Jonqui of any alleged liability.

In the Motion, Defendants argue that they were not the proximate cause of the accident. (Doc. No. 21.)  First, they assert that the accident was not foreseeable because Jonqui cannot be expected to anticipate that another motorist would violate the law.  (*Id*. at PageID#s 94-95.)  Second they maintain that C.P.'s violation of the clear distance and the marked lanes rules were superseding causes that broke the causal chain.  (*Id*. at PageID# 95.)  Third, they contend that the sudden-medical-emergency affirmative defense does not shift liability to Defendants.  (*Id*. at PageID# 97.)  Overall, Defendants maintain that this Court should grant summary judgment because Plaintiff has failed to show that Jonqui's actions were the proximate cause of P.P.'s injuries.

---

[7] Accordingly, this Court will limit its analysis to the issue of proximate cause.  Therefore, it declines to address the parties' arguments as to whether Defendants breached a duty of care.

[8] The Opposition makes clear that Plaintiff is not suing on behalf of C.P. or suing him.  (Doc. No. 24 at PageID# 140.) Instead, she maintains that C.P. was a third-party whose alleged negligence, if he had been the subject of the suit, would be precluded from liability under the sudden-medical-emergency affirmative defense.  (*Id.*)

7

In the Opposition, Plaintiff disagrees and argues that C.P.'s loss of control and subsequent crash were foreseeable. (Doc. No. 24.)  First, Plaintiff contends that Ohio courts have *not* universally held that drivers stopped on the shoulder need not anticipate that another motorist will violate the law.  (*Id*. at PageID# 146.)  Second, she maintains that the cases cited by Defendants are inapposite to this action because C.P. is a third-party and not a plaintiff in this case.  (*Id*. at PageID# 147.)  Third, she argues that Ohio law permits juries to allocate fault where there is more than one tortfeasor.  (*Id*. at PageID# 137.)  In essence, Plaintiff contends that this Court should deny the Motion because Defendants' actions were one cause of P.P.'s injuries and the law excuses any negligence on the part of C.P.

In their Reply, Defendants take issue with some of the arguments raised by Plaintiff in the Opposition. (Doc. No. 26.)  First, Defendants argue that the sudden-medical-emergency affirmative defense does not shift liability to Defendants.  (*Id*. at PageID# 314.)  Second, they contend that Plaintiff cannot overcome proximate cause by simply asserting that P.P. was not the driver of the Jeep.  (*Id*. at PageID# 315.)  Third, they note that the sudden-medical-emergency affirmative defense, which Plaintiff argues would excuse C.P.'s alleged negligence, necessarily involves the onset of, as its namesake indicates, a sudden, and thus, unforeseeable illness.  (*Id*. at PageID# 316.)  On the whole, Defendants emphasize their initial arguments while criticizing the new assertions made by Plaintiff in the Opposition.

This Court will address these arguments below, albeit not in the order they were raised, and ultimately conclude that Plaintiff has failed to show that Jonqui's stop on the shoulder of I-90 was the proximate cause of P.P.'s injuries.

"Proximate cause is a troublesome phrase.  It has a particular meaning in the law but is difficult to define."  *Corrigan v. E.W. Bohren Transport Co.*, 408 F.2d 301, 303 (6th Cir. 1968) (applying Ohio law).  "Proximate causation has been described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'"  *Queen City Terminals, Inc., v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 670 (Ohio 1995) (quoting Prosser & Keeton, Law of Torts (5th ed. 1984) 263, Section 41).  *See also R.H. Macy & Co., Inc.*, 554 N.E.2d at 1316.  Or, stated more precisely, the rule of proximate cause "requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act."  *Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964).

"It is well accepted that two factors can combine to produce damage or illness, each being considered a proximate cause of the injury."  *Czarney v. Porter*, 853 N.E.2d 692, 694 (Ohio App. 8th Dist. 2006) (citing *Johnson v. Pohlman*, 833 N.E.2d 313, 320 (Ohio App. 8th Dist. 2005).  "However, the causal connection between one defendant's act and the resulting damage may be broken by an intervening cause."  *Id.  See also R.H. Macy & Co., Inc.*, 554 N.E.2d at 1316; *Queen City Terminals, Inc.*, 653 N.E.2d at 670 (same).  Indeed, "[w]here a force intervenes between the defendant's conduct and the plaintiff's injury, it may relieve the defendant of liability by severing the requisite causal connection."  *Am. Winds Flight Academy v. Garmin Int'l*, 2010 WL 3783136 at * 8 (N.D. Ohio Sept. 17, 2010) (citing *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1071-72 (Ohio 1993)).

9

An intervening cause, however, "does not operate to sever the causal link if the alleged intervening cause was reasonably foreseeable by the one who is guilty of the negligence." *Johnson*, 833 N.E.2d at 321.  *See also Noco Company v. OJ Commerce, LLC*, 35 F. 4th 475, 483 (6th Cir. 2022) (applying Ohio law, noting that "even if there is an intervening event, the defendant will still be liable if he could have reasonably foreseen the intervening event.")  As the Ohio Supreme Court explained in *Cascone v. Herb Kay Co.*, 451 N.E.2d 815 (Ohio 1983):

> Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.

*Id*. at syllabus, ¶ 1.  *See also Leibreich*, 617 N.E.2d at 1071; *Am. Winds Flight Academy*; 2010 WL 3783136 at * 8.

The Ohio Supreme Court further explained that the test for whether or not an act constitutes an intervening cause is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor."  *Cascone*, 451 N.E.2d at 819. *See also Queen City Terminals, Inc*. 653 N.E.2d at 671.  In this context, the word "independent" means "the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence." *Queen City Terminals, Inc.,* 653 N.E.2d at 671 (quoting *Leibreich,* 617 N.E.2d at 1072); *R.H. Macy & Co.*, 554 N.E.2d at 1317.  "New" means that the second act of negligence could not have reasonably been foreseen.  *See Queen City Terminals, Inc*., 653 N.E.2d at 671; *Leibreich*, 617 N.E.2d at 1072; *R.H. Macy & Co.*, 554 N.E.2d at 1317.  *See also Noco Company*, 35 F. 4th at 483 (applying Ohio law, noting that "[t]he acts of a third party that

10

independently cause the plaintiff's harm are a superseding cause only if the defendant couldn't have foreseen it … But the act must be an 'efficient, independent, and self-producing cause of the injury' to break the causal chain.") (quoting *Smith v. Hess*, 108 N.E.3d 1266, 1272 (Ohio App. 2d Dist. 2018)).

**A. C.P.'s failure to remain within his lane of travel and keep a reasonable distance from the Truck constituted an "independent" act with no causal relationship to Jonqui's alleged negligence**

To support the argument that C.P.'s act of swerving constituted a superseding cause, citing to *Wheeler v. Estes Express Lines*, Defendants argue that Jonqui cannot be expected to anticipate that another motorist would violate the law.  (Doc. No. 21 at PageID#s 94-95) (citing 53 F. Supp. 3d 1032, 1041 (Ohio N.D. 2014)).[9]  In *Wheeler*, Wheeler was driving his truck on the turnpike when he ran out of gas.  Accordingly, he "pulled out of the right-hand lane and completely onto the

---

[9] Plaintiff takes issue with Defendants' citation to *Wheeler*.  She concedes that "some Ohio cases have concluded that a driver parked on the shoulder need not foresee their vehicle being struck by another negligent driver" but argues that other Ohio courts have reached the opposite conclusion. (Doc. No. 24 at PageID# 148.)  Plaintiff cites to *Reiselman v. Dodd*, 1992 WL 249937, at *8 (Ohio App. 10th Dist. Sep. 29, 1992) to support this proposition. (*Id*. at PageID# 146.) In that case, the defendant's vehicle struck the plaintiff's vehicle. *Reiselman*, 1992 WL 249937, at *1.  Plaintiff stopped his vehicle on the shoulder of the roadway and was outside of his vehicle inspecting it for damage, when he was soon hit by a third-party driver who negligently operated his vehicle so as to cause it to directly collide with the plaintiff. *Id*. at *2.  There, the state appellate court reversed the trial court's finding that the plaintiff's injuries were unforeseeable at the time of the original impact, and instead, held that "reasonable minds could reach different conclusions." *Id*. at *2. However, *Reiselman* is distinguishable from this matter because there, the subsequent cause of the plaintiff's injuries sustained as a result of the negligence of the third-party driver was not "independent" from the defendant's negligence. There, plaintiff "was required to stop at the scene of the accident as a result of defendant's negligence." *Id*. at *8.  Thus, in *Reiselman*, the defendant's negligence is what caused plaintiff to initially stop on the shoulder and exit his vehicle, where he was then struck by a second negligent driver.  In other words, the defendant's actions created the risk that put the plaintiff in harm's way.  Here, P.P. was not injured because Jonqui stopped on the shoulder but because C.P. swerved out of his lane and struck the rear of the Truck.  Here, C.P.'s actions broke the chain of causation and constituted a superseding cause of P.P.'s injuries.

Plaintiff also generally maintains that the cases cited by Defendants are inapposite because unlike in those cases, C.P. is a third-party and not a plaintiff in this case. (Doc. No. 24 at PageID# 147.)  This Court rejects this argument because whether Defendants proximately caused P.P.'s injuries is a separate issue from whether the sudden-medical-emergency affirmative defense bars Plaintiff from recovering damages from the estate of C.P.  If anything, as Defendants point out, (Doc. No. 26 at PageID# 314), the applicability of this doctrine supports this Court's finding that proximate cause does not exist because the doctrine requires the onset of an unexpected illness.

11

shoulder." *Id*.  About forty-five minutes after Wheeler pulled on to the shoulder, Rogge arrived with his tow truck and parked it on front of Wheeler's truck.  *Id*.  At no point during the stop did Wheeler or Rogge place reflective triangles behind the disabled truck despite federal regulations requiring them to do so.  *Id*.  About fifteen minutes after Rogge arrived, Ray, a fellow truck driver, driving in the left lane, attempted to merge into the right lane.  *Id*.  While merging, he crashed into Wheeler's vehicle.  Both parties suffered severe and permanent injuries as a result of the collision, including Rogge having both of his legs amputated.  *Id*.  Wheeler and Rogge brought suit against Ray, and in a motion for summary judgment, Ray claimed that if he had seen reflective triangles behind the disabled truck he would not have merged lanes.  *Id*. at 1036.

The district court in *Wheeler* ultimately concluded that "[a] jury could not rationally find the collision between [plaintiffs'] trucks was a foreseeable result of the lack of triangles or the location of [the tow] truck." *Id*.  at 1041.  It held:

> [S]uch finding would run counter to Ohio law, which holds drivers stopped on the shoulder "need not anticipate that another driver will violate the law and that a collision will occur." *McDougall v. Smith,* 191 Ohio App.3d 101, 104, 944 N.E.2d 1218 (2010); *see Andrews v. Davis,* 140 Ohio App.3d 707, 711, 748 N.E.2d 1195 (2000) (even if truck driver was "arguably negligent" for parking truck on highway shoulder, second driver's action in giving plaintiff "brake job," which caused plaintiff's car to swerve and crash into truck, was "new and independent event" absolving truck driver of liability); *Estate of Mathewson v. Decker,* 2006 WL 1519687, \*4 (Ohio App.) (oncoming motorist's collision with truck parked on shoulder was unforeseeable result of decision to park truck on shoulder).

*Id*.  There, the court could not find that Wheeler and Rogge's own negligence caused the crash because the evidence established that Ray knew a vehicle was stopped on the shoulder.  *Id*.  Ray admitted that he saw the truck's hazard lights right before or during the merge and did not testify that there were any objects ahead of him in the right lane.  *Id*.  Thus, the district court held that no reasonable jury could find that the presence of reflective triangles behind the disabled truck would

12

have prevented the crash because Ray knew the truck was stopped and thus the entire accident could have been avoided by exercising ordinary care.  *Id*.

The district court in *Wheeler* additionally explained that proximate cause did not exist "because the evidence [did] not show any cause-and-effect relationship between plaintiffs' negligence and the crash, any reasonable jury would find Ray's negligence was an 'independent' act."  *Id*. at 1041-42.  More specifically, "the evidence [did] not permit a rational finding that Ray's subsequent failure to remain in his lane and maintain an assured clear distance was the natural effect of the missing reflective triangles or the diminished visibility of Rogge's emergency lights."  *Id*. at 1042.

Applying *Wheeler*, Defendants correctly maintain that C.P.'s violation of the clear distance and the marked lanes rules were superseding causes that broke the causal chain.  (Doc. No. 21 at PageID# 95.)  The marked lanes rule provides that "a vehicle ... shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."  R.C. 4511.33(A)(1).  The clear distance rule sets forth that "no person shall drive any motor vehicle … in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."  R.C. 4511.21(A).  Ohio courts have found a violation of this statute occurs when a driver collides "with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible."  *Pond v. Leslein,* 647 N.E.2d 477, 478 (Ohio 1995).  Here, Jonqui could not have been expected to anticipate that C.P. would violate the marked lanes and clear distance rules.

13

The parties do not dispute that C.P. departed from his lane of traffic and collided with rear of the Truck.  (Doc. No. 24 at PageID# 135); (Doc.No. 21 at PageID# 92.)  However, Plaintiff argues that Jonqui was negligent because he violated local traffic law by stopping on the shoulder.  (Doc. No. 24 at PageID# 134.)  Namely, she asserts that Jonqui "did not activate his hazard lights or put out any safety equipment" or have a reasonable excuse to stop on the shoulder.  (Doc. No. 24 at PageID# 133) (citing Doc. No. 24-3 at PageID# 228.)[10]  For reasons set forth below, the evidence does not show any cause-and-effect relationship between Jonqui's alleged negligence and the crash. Accordingly, any reasonable jury would find C.P.'s negligence constituted an "independent" act.

This Court will look first at on the effect of Jonqui's alleged failure to turn on his hazard lights and put out safety equipment on proximate cause.  At the time of the crash, the weather conditions were clear, and the traffic was not heavy.  More significantly, Plaintiff admits that the Truck was stationary at the time of the accident and parked completely over the line.  *See* (Doc. No. 21-3 at PageID# 119.)   Plaintiff also concedes that the Truck did not suddenly appear in the path of the Jeep and was readily discernible at the time of the collision.  *Id.*  As in *Wheeler*, the evidence does not allow "a rational finding that [C.P.'s] subsequent failure to remain in his lane and maintain an assured clear distance was the natural effect of the missing reflective triangles [and flashing hazard lights.]"  *Wheeler*, 53 F. Supp. 3d at 1042.  Accordingly, a reasonable jury could not find that Jonqui's alleged failure to turn on his hazard lights and put out safety equipment caused the crash

---

[10] Plaintiff also notes that Jonqui disregarded several signs on the road that read: "SHOULDER – AUTHORIZED BUSES ONLY" in a feeble attempt to argue that only buses were permitted to stop on the shoulder.  (Doc. No. 24 at PageID# 134) (citing (Doc. No. 24-3 at PageID# 224.))  However, Plaintiff fails to cite any authority in support of this assertion.  Ohio law already places restrictions on a driver's ability to stop on the shoulder.  *See*, e.g., R.C. 4511.66. Plaintiff fails to offer support for her view that this sign further restricts the exceptions carved out in R.C. 4511.66. Accordingly, this sign does not seem applicable to the facts of the instant case as it appears to authorize certain buses to *travel* on the shoulder, not restrict those who can stop there.

14

because the Truck was discernable and visibly stationary immediately before the collision, and thus, the crash could have been avoided through the exercise of ordinary care.

This Court will next evaluate the effect of the nature of Jonqui's stop on proximate cause. Although there may be merit to Plaintiff's claim that the need to respond to a message from one's supervisor does not present a reasonable basis to stop on the shoulder, this assertion does not impact this Court's proximate cause analysis.[11]  As the district court in *Wheeler* pointed out, "[a]t best, plaintiffs' alleged negligence may have furnished a condition that made the accident possible: by not using reflective triangles and failing to park behind Wheeler's truck, Wheeler and Rogge may have contributed to Ray's initial decision to merge into the right-hand lane."  *Wheeler*, 53 F. Supp. 3d at 1042.  "But when 'the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent act caused the injury, the existence of such condition is not the proximate cause of the injury.'"  *Id*. (quoting *Anderson v. Augenstein,* 1988 WL 116328, *3 (Ohio App. 3d. Dist. 1998)).  Here, Jonqui would not be more or less likely to foresee C.P. swerving onto the shoulder and crashing into him had he been stopped on the shoulder for a different, perhaps more legally permissible, reason.  In other words, whether Jonqui stopped on the shoulder because the Truck broke down, he ran out of gas, or he felt he had to respond to a message from his boss, the nature of Jonqui's stop does not affect how foreseeable it was that the Jeep would crash into the Truck.  Here, C.P.'s failure to remain within his lane of travel and keep a reasonable distance from the Truck constituted an "independent" act with no causal relationship to Jonqui's alleged negligence.  Thus, the Court grants the Motion as it applies to the First Cause of Action, Plaintiff's negligence claim against Jonqui.

---

[11] Ohio law prohibits parking on the shoulder "if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway."  R.C. 4511.66.

**B.**      **Whether C.P. could be absolved of liability under the sudden-medical-emergency affirmative defense does not change this Court's proximate cause analysis.**

Plaintiff maintains that any such negligence on the part of C.P. is excused under the sudden-medical-emergency affirmative defense.  (Doc. No. 24 at PageID# 148.)  "Under Ohio law, '[w]here the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control.'"  *Cline v. Dart Transit Co.*, 2023 WL 3003190, at *4 (6th Cir. Apr. 19, 2023) (quoting *Roman v. Est. of Gobbo*, 791 N.E.2d 422, 432 (Ohio 2003)).  While C.P.'s alleged negligence may be excused under this doctrine had he been sued, it is not applicable here.  *See Kinzer v. Serv. Trucking, Inc.*, 2020 WL 815665 (S.D. Ohio Feb. 19, 2020) ("The sudden medical emergency doctrine has no application in this case.  Even if it is a defense to [C.P.'s] violation of the assured clear distance rule, the sudden medical emergency doctrine does not operate to shift liability from [C.P.] to [Defendants].")  The sudden-medical-emergency affirmative defense does not shift liability to Defendants, and Plaintiff still needs to show proximate cause to succeed on her negligence claim.

Plaintiff makes several arguments related to this doctrine, but each of them fails because Defendants never raise the sudden-medical-emergency doctrine as an affirmative defense.  First, Plaintiff argues that the applicability of the sudden-medical-emergency affirmative defense is a question for the jury to decide.  (Doc. No. 24 at PageID# 139) (citing *Johnson v. Swift Transp. Co. of Arizona*, *LLC*, 2013 WL 796147 (S.D. Ohio Mar. 4, 2013)).  However, in the case that Plaintiff relies on to support this proposition, the defendant raised the sudden-medical-emergency affirmative defense to argue that the third party's decedent's heart attack excused his own negligence.  *Johnson*, 2013 WL 796147, at *3.  Defendants point out that they did not raise the sudden-medical-emergency

16

doctrine as an affirmative defense.[12]  (Doc. No. 26 at PageID# 314.)  Rather, the basis for the Motion is that Plaintiff failed to show proximate cause.  (*Id.*)  Thus, Plaintiff's argument fails.[13]

Second, Plaintiff asserts that Defendants bear the burden of proof at the summary judgment stage when an affirmative defense is raised and can succeed "only if the record shows that the defendant established the defense so clearly that no rational jury could have found to the contrary." (Doc. No. 24 at PageID# 138) (citing *Cline,* 2023 WL 3003190, at *10-11).  Plaintiff cites to the Sixth Circuit's decision in *Cline* to support this proposition, but there, the defendant raised the sudden-medical-emergency affirmative defense.  2023 WL 3003190, at *3.  Again here, Defendants never raise the sudden-medical-emergency affirmative defense.  They do not assert that Jonqui suffered from a sudden medical emergency at the time of the incident or that he reacted to the alleged sudden medical emergency in a manner that would absolve him of liability.  Plaintiff misapplies the sudden-medical-emergency affirmative defense to the facts of this case.

**C.      Since Plaintiff cannot demonstrate proximate cause, the Second and Third Causes of Action also fail.**

As this Court has already stated, Plaintiff asserts the following causes of action: (1) negligence against Jonqui; (2) vicarious liability against Day & Ross and A&S; and (3) negligent hiring, training, and supervision against Day & Ross and A&S.  (Doc. No. 13.)  The Court has already granted the Motion as to the First Cause of Action after finding that Plaintiff failed to allege that Jonqui proximately caused P.P.'s injuries.  Accordingly, the Second and Third Causes of Action

---

[12] Defendants also do not raise the affirmative defense in their Answer to Plaintiff's First Amended Complaint.  (Doc. No. 16.)

[13] Plaintiff does not address the district court's brief reference to causation.  Thus, this Court declines to do so here. Nonetheless, it notes that the facts in *Johnson* differ from this action as that case involved a dispute of fact as to whether defendant truck driver was speeding.  The facts in this case are more akin to cases like *Kinzer*, 2020 WL 815665, at *1, and *Wheeler*, 53 F. Supp. 3d at 1035, where the parties collided while one vehicle was stationary and stopped on the shoulder.

fail because the underlying negligence action did not survive.  *See Comer v. Risko*, 833 N.E.2d 712, 717 (Ohio 2005) (citation omitted).  ("[T]here can be no vicarious liability imputed to a principal, if there is no liability on the part of the agent"); *Abrams v. Worthington*, 861 N.E.2d 920, 923 (Ohio App. 10th Dist. 2006) ("As with all other negligence-based torts, a plaintiff must prove the basic elements of negligence—duty, breach, proximate cause, and damages—in order to prevail on claims for negligent hiring and negligent retention.")  Accordingly, for the reasons set forth above, the Court grants the Motion and dismisses all three causes of action.

## V.      Conclusion

No reasonable jury could find that Defendants' actions were the proximate cause of P.P.'s injuries.  Thus, for the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. No. 21) is granted, and the action is dismissed.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*

PAMELA A. BARKER

Date:  June 8, 2026                               U. S. DISTRICT JUDGE